# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMIR CHARNIS,<br><br>           Plaintiff,<br><br>   vs.<br><br>WATERSPORT PRO, LLC, a Nevada limited liability company; CLINT HARBERS, an individual; ERIC MONTELEONE, an individual; DOES I–X, and ROE CORPORATIONS and LLCs I–X,<br><br>           Defendants. | Case No.: 2:07-cv-00623-RLH-GWF<br><br>**O R D E R**<br><br>(Motion for Summary Judgment regarding Punitive Damages–#57; Motion for Summary Judgment–#58; Motion for Summary Judgment regarding Eric Monteleone–#59) |

      Before the Court is Defendants Watersport Pro, LLC, Clint Harbers, and Eric Monteleone's **Motion for Summary Judgment** (#58), filed January 16, 2009. The Court has also considered Plaintiff Amir Charnis' Opposition (#72), filed February 3, 2009, and Defendants' Reply (#75), filed February 17, 2009.

      Also before the Court is Defendants' **Motion for Summary Judgment Regarding Punitive Damages** (#57), filed January 16, 2009. The Court has also considered Plaintiff's Opposition (#71), filed February 3, 2009, and Defendants' Reply (#76), filed February 17, 2009.

/

Also before the Court is Defendants' **Motion for Summary Judgment Regarding Eric Monteleone** (#59), filed January 16, 2009. The Court has also considered Plaintiff's Opposition (#70), filed February 3, 2009, and Defendants' Reply (#74), filed February 17, 2009.

## BACKGROUND

Plaintiff Amir Charnis is a resident of the state of California. Defendant Watersport Pro, LLC, is a Nevada corporation with its principal place of business in Nevada and on the waters of Lake Mead, which border Nevada and Arizona. Watersport provides water recreational activities and instruction, emphasizing in particular water skiing and wakeboarding. Defendant Clint Harbers is a Nevada resident who owns and manages Watersport. Harbers oversees Watersport's financial and business obligations, and he works in conjunction with Lake Mead and the National Park Service in the operation of Watersport's water skiing and wakeboarding operations.

Prior to the event in question, Harbers contracted with Eric Monteleone, a boat operator, to perform wakeboarding excursions on a reservation-by-reservation basis. Monteleone holds a United States Coast Guard Merchant Marine Officer's certification, National Park Service licensure, and a USA Waterski Federation instructor's license. According to Defendants, Monteleone passed the Coast Guard's drug test in order to operate a motor boat on Lake Mead.

On the morning of July 24, 2004, Charnis accompanied a group of individuals that had reserved a wakeboarding trip with Watersport. Monteleone was in charge of the excursion. Prior to wakeboarding, Charnis, and all of the other participants, voluntarily executed a waiver of liability. Charnis initialed each paragraph of the document and signed his full name at the bottom of the last page. In the contract, Charnis "voluntarily and freely" assumed the "inherent risks and dangers" associated with the "dangerous sport[]" of wakeboarding. (Dkt. #58, Mot. for Summ. J. Ex. F.) Charnis also "fully and forever waive[d], release[d], and discharge[d]" Watersport of all liability, including "injury resulting from any and all actions or inactions of Watersport Pro, LLC, or from any other cause or causes." (*Id.*) Charnis also agreed to "release[] any and all claims

against Watersport Pro, LLC, its employees, instructors, [and] agents . . ., including any claims caused by the negligence of Watersport Pro, LLC." (*Id.*) At the time he signed the waiver, Charnis affirmed in writing that he was not under the influence of alcohol or drugs and that he was of a sound mind.

Charnis does not contest the legal enforceability of this waiver. He does, however, allege that Monteleone brought alcohol and marijuana with him on the trip and that he consumed both substances while operating the boat. In addition to his own testimony, Charnis offers the testimony of Jason Landver and Omar Lari, two of his friends, who state that they saw Monteleone consume alcohol and marijuana on board. Charnis alleges that when it was his turn to use the wakeboard, he entered the water and situated himself on the wakeboard. While he was wakeboarding, Charnis claims that Monteleone drove the boat "in a very dangerous manner" by "making turns to cause Plaintiff to have to navigate over the wake left by the boat," thereby causing Plaintiff to fall awkwardly and fracture his right tibia in six different places. (Dkt. #72, Opp'n 3.) Charnis alleges Monteleone drove in this manner because he was under the influence of drugs and alcohol.

On July 24, 2006, Plaintiff filed suit in the District Court of Clark County, alleging negligence on the part of Defendants. In the Complaint, Charnis alleged that Monteleone's negligent operation of the boat caused him to be "thrown from the boat." (Dkt. #1, Pet. for Rem. Ex. A.) Plaintiff now claims that his injury occurred while he was wakeboarding behind the boat. On May 11, 2007, Defendants removed the case based upon the diversity of the parties. Defendants now move for summary judgment and seek dismissal of this entire action. Defendants also move separately for summary judgment regarding Plaintiff's claim for punitive damages and for summary judgment solely as it pertains to Eric Monteleone. For the reasons discussed below, Defendants' Motions are all denied.

/

/

AO 72
(Rev. 8/82)

**DISCUSSION**

**I.     Jurisdiction**

Defendants removed this case based on the diversity of the parties. Nonetheless, both parties admit that this Court has admiralty jurisdiction over this case as well. Federal courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). A tort claim falls within the admiralty jurisdiction of the federal courts when two conditions are met. First, the tort must occur on navigable waters; second, the actions giving rise to the tort claim must "bear a significant relationship to traditional maritime activity." *Sisson v. Ruby*, 497 U.S. 358, 365–66 (1990); *see also Taghadomi v. United States*, 401 F.3d 1080, 1084 (9th Cir. 2005).

Admiralty jurisdiction is appropriate in this case because both of these conditions are met. First, a body of water is "navigable" when it forms the border between two states and is capable of supporting maritime commerce. *Newhouse v. United States*, 844 F. Supp. 1389, 1391–92 (D. Nev. 1994). Lake Mead is such a body of water. *See id.* (holding that admiralty jurisdiction applies to a boating accident occurring on Lake Mead). Second, the operation of recreational boats, including those pulling skiers or wakeboarders, bears a significant relationship to traditional maritime activity. *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 539–40 (1995) (holding that navigation of boats in navigable waters is "closely related to activity traditionally subject to admiralty law"); *Hogan v. Overman*, 767 F.2d 1093, 1093 (4th Cir. 1985).

"With admiralty jurisdiction . . . comes the application of substantive admiralty law." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986). In fact, even if a case is removed to federal court based on diversity, federal maritime law must be applied if admiralty jurisdiction exists. *See Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d 306, 311 (S.D.N.Y. 2004) ("It is well settled that if a complaint in a tort action invoking diversity jurisdiction pleads a claim within the admiralty jurisdiction of the federal courts, the district court will apply the general maritime law."); *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d

AO 72
(Rev. 8/82)

1066, 1071 (9th Cir. 1985) ("In diversity cases, admiralty issues are generally covered by maritime law."). But while substantive admiralty law controls the rights and liabilities of the parties, state law may nonetheless be relevant. *Diesel "Repower," Inc. v. Islander Invs.*, 271 F.3d 1318, 1322 (11th Cir. 2001). State law—in this case Nevada law—may be applied to the extent that it "would not disturb the uniformity of maritime law." *Kossick v. United Fruit Co.*, 365 U.S. 731, 738 (1961).

## II. Motion for Summary Judgment

### A. Legal Standard

A court will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 249 (1986). In evaluating a motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

The movant bears the burden of showing that there are no genuine issues of material fact. *Id.* "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the movant satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps.,*

AO 72
(Rev. 8/82)

*Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

**B.     Analysis**

Defendants move for summary judgment, arguing that Charnis' negligence claim fails as a matter of law (1) because he assumed the risks inherent to the sport of wakeboarding and (2) because he signed a waiver of liability releasing Defendants from liability for any injuries arising from his accident. Charnis argues in response (1) that assumption of the risk is not a valid defense under maritime law and (2) that while he agreed not to sue Defendants for accidents arising from wakeboarding, he did not agree to wakeboard while the boat operator was drinking and using marijuana.

**1.     Governing Law**

In order to properly address Defendants' Motion, the Court must first ascertain what law applies to this dispute. As stated previously, federal substantive admiralty law applies to this dispute, but may be supplemented by state law if necessary. *Diesel "Repower," Inc.*, 271 F.3d at 1322. Accordingly, the first question before this Court is whether federal maritime law addresses assumption of risk and the enforceability of liability waivers. If a gap in maritime law exists in either category, the Court will look to Nevada state law.

Charnis argues that the liability waiver is unenforceable because under federal maritime law assumption of risk is not a valid defense. Plaintiff is partially correct. It is true that assumption of risk is not an available defense in maritime cases involving personal injury. *See De Sole v. United States*, 947 F.2d 1169, 1174–75 (4th Cir. 1991) (holding that federal maritime law does not recognize assumption of risk defense "in commercial or recreational situations"); *Skidmore v. Grueninger*, 506 F.2d 716, 727 (5th Cir. 1975) ("[T]he doctrine of assumption of risk does not apply in maritime cases where seamen are not involved."). Nonetheless, this does not preclude Defendants from raising the defense of waiver in this case. Assumption of risk and

AO 72
(Rev. 8/82)

waiver of liability are two different affirmative defenses and are addressed separately by courts. *See Strawbridge v. Sugar Mountain Resort, Inc.*, 328 F. Supp. 2d 610, 611 (W.D.N.C. 2004); *Benson v. Am. Aerolights, Inc.*, 1985 WL 965, *2 (N.D. Ill. 1985). Recently, in fact, a federal court in New York addressed assumption of risk and waiver of liability defenses separately in a tort claim governed by federal maritime law. *Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d at 321–23. Thus, while assumption or risk does not apply to this case, Defendants may be insulated from liability based on the doctrine of waiver.

After reviewing the relevant case law on this topic, the Court finds that federal admiralty law sufficiently addresses the enforceability of liability waivers. Among federal courts that have addressed this issue, the clear majority holds that under federal admiralty law, owners of recreational vessels may, through written waivers, disclaim liability for their own negligence. *See Olivelli v. Sappo Corp., Inc.*, 225 F. Supp. 2d 109, 118–20 (D.P.R. 2002) (validating release of liability for negligence signed by scuba diver in wrongful death claim); *Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc.*, 1999 WL 3323277, *3 (S.D. Fla. 1999) (holding that a pre-accident waiver signed by a scuba diver absolved defendant from liability); *Waggoner v. Nags Head Water Sports, Inc.*, 141 F.3d 1162, *5–6 (4th Cir. 1998) (enforcing a liability waiver and dismissing negligence claim against a company that rented a jet ski to the plaintiff). In coming to this conclusion, courts reference the Limitation of Liability Act, which states that "[it] shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port" to enter into a contract purporting to waive liability for negligence on the part of the vessel, its employees, or its agents. 46 U.S.C. § 183(a). Although this statute disallows the use of liability waivers, on its terms it is limited solely to "vessel[s] transporting passengers between ports." *Id.* Accordingly, federal courts applying maritime law hold that the prohibition on liability waivers applies only to common carriers and that owners of recreational vessels may enforce such waivers. *See Olivelli*, 225 F. Supp. 2d at 119; *Cutchin*, 1999 WL at *3; *Waggoner*, 141 F.3d at *5–6.

AO 72
(Rev. 8/82)

## 2. Application of Substantive Admiralty Law

Although owners of recreational vessels may enforce liability waivers against plaintiffs bringing tort claims, this is not to say that all such waivers are automatically valid. Federal courts applying maritime law, similar to many state courts, enforce exculpatory contracts only if certain requirements are met. Consequently, a pre-accident waiver absolves a defendant of liability for recreational accidents taking place on navigable waters only if the exculpatory clause (1) is clear and unambiguous; (2) is not inconsistent with public policy; and (3) is not an adhesion contract. *Olivelli*, 225 F. Supp. 2d at 118–19; *see also Cutchin*, 1999 WL 33232277, *3.

Reviewing the evidence in the light most favorable to Plaintiff, the Court concludes that the liability waiver is valid and enforceable. First, the waiver was clear and unambiguous. Charnis knowingly signed a contract agreeing to release Watersport, its employees, and its agents from any and all liability. As stated in the contract, this included claims for negligence on the part of Defendants. Because this language was clear and because negligence was specifically mentioned, the first requirement is satisfied. Second, the Court finds no evidence that the exculpatory clause is inconsistent with public policy. When Congress enacted the Limitation of Liability Act, it expressly limited the prohibition on liability waivers to common carriers. The fact that Congress implicitly allowed all other types of vessels to limit liability through contract indicates that such waivers do not contravene public policy. *See Olivelli*, 225 F. Supp. 2d at 118. Moreover, Plaintiff has not made any specific argument as to why such waivers are against public policy. The Court therefore finds that the second requirement is also satisfied. Finally, the Court finds that the liability waiver is not a contract of adhesion. In so holding, this Court is persuaded by the court's reasoning in *Olivelli v. Sappo Corp.* when it held that a contract releasing a scuba diving instructor from liability was not a contract of adhesion: "[T]here is nothing inherently unfair in the mandatory use of waivers in recreational sporting events." *Id.* at 118–19. Such activities are "strictly voluntary recreational pursuit[s], and do[] not constitute the rendition of

/

essential services such as medical care or public transportation, where courts would be more likely to find that a contract of adhesion exists." *Id.*

For the above reasons, the Court finds that the liability waiver is enforceable under federal maritime law. Nonetheless, Plaintiff does not contest the enforceability of the waiver. Instead, Charnis argues that this accident falls outside of the scope of the waiver. Although Charnis admits he agreed to hold Defendants harmless for dangers inherent to the sport of wakeboarding, he argues that he did not consent to wakeboard while the boat operator was under the influence of drugs and alcohol. Charnis' argument has merit, at least to the point of surviving summary judgment, because Monteleone's actions may have amounted to gross negligence. Under federal maritime law (and the law of almost all states), owners of recreational boats may disclaim liability for negligence, but they may not do so for gross negligence. *Royal Ins. Co. of Am v. Sw. Marine*, 194 F.3d 1009, 1016 (9th Cir. 1999). Gross negligence goes beyond ordinary negligence and is the "willful, wanton, or reckless" infliction of harm. *Id.*

The Court has not been able to locate a federal maritime case addressing whether consuming alcohol and drugs while operating a boat constitutes gross negligence. Nonetheless, federal and state courts have held that consumption of alcohol coupled with operation of a motor vehicle can amount to gross negligence. *See Arthur v. Arthur*, 684 F.2d 558, 561 (8th Cir. 1982) ("Driving after having consumed intoxicating liquor may constitute gross negligence."); *Kissinger v. Frankenhouser*, 308 F.2d 348, 351 (4th Cir. 1962) (holding that under Virginia law a person operating a vehicle under the influence of alcohol may be grossly negligent); *Davis v. Walent*, 449 N.E.2d 382, 388 (Mass. App. Ct. 1983) (upholding jury determination that an intoxicated driver traveling at an excessive speed was grossly negligent). Furthermore, the Court cannot locate a case holding that driving while intoxicated is *not*, as a matter of law, gross negligence. Thus, case law, combined with the evidence in this case, compels the Court to deny Defendants' Motion for Summary Judgment. A reasonable juror could find that by operating a motor boat while consuming controlled substances Monteleone acted in a wilful, wanton, and reckless manner,

AO 72
(Rev. 8/82)

thereby constituting gross negligence. Defendants' Motion for Summary Judgment is therefore denied.

**III.     Motion for Summary Judgment Regarding Eric Monteleone**

Defendants have also filed a motion for summary judgment, arguing that Watersport and Clint Harbers should be dismissed from this case. According to Defendants, because Monteleone is an independent contractor, Watersport and Harbers cannot be liable for his alleged negligence. The Court disagrees.

Plaintiff and Defendants both fail to address the fact that admiralty law, not state or general common law, applies to this issue. "It is abundantly clear that when determining employment status in an admiralty case, standards of maritime law are to apply instead of common law standards." *Yacht Sales Int'l, Inc. v. City of Virginia Beach*, 1997 WL 862761, *7 (E.D. Va. 1997) (citing *United States v. Webb, Inc.*, 397 U.S. 179 (1970)). As a general rule, captains and crews are employees of the owners of the vessels on which they serve. *United States v. Webb*, 424 F.2d 1070, 71 (5th Cir. 1970). Where a more detailed analysis is required, the standard factors used to determine whether an individual is an employee under maritime law are (1) the degree of control exercised over the details of the operation; (2) the amount of supervision; (3) the amount of investment in the operation; (4) the method of payment; (5) the parties' understanding of the relationship; (6) the right to discharge; (7) the furnishing of tools; (8) and the furnishing of the place to work. *Webb*, 397 U.S. at 193; *Wheatley v. Gladden*, 660 F.2d 1024, 1026 (4th Cir. 1981). Similar to state law, control is the most important factor in this analysis. *Webb*, 397 U.S. at 193. Nonetheless, because maritime workers are generally given more discretion than land-based workers, less control may be needed in order to establish an employment relationship in admiralty cases. *Id.*

Applying the above law, the Court denies Defendants' request to dismiss Watersport and Harbers, and it finds that Monteleone is an employee, not an independent contractor. As noted above, captains are considered employees of the vessel owners. Even if

AO 72
(Rev. 8/82)

Monteleone was not technically Watersport's "captain," he was clearly in charge of the wakeboarding expedition and given sole responsibility over the passengers. Furthermore, the relevant factors weigh in favor of finding that Monteleone is an employee. Factors three, seven, and eight are especially persuasive. As the owner of the boat, Watersport has a significant investment in the wakeboarding expedition. In addition, Watersport furnished the boat for the expedition and acquired permission from the National Park Service to conduct wakeboarding excursions on Lake Mead. Finally, the Court finds Watersport exercised a sufficient amount of control over Monteleone to justify the existence of an employment relationship. Watersport controlled the time and place of the expedition, and Monteleone conducted the expedition under its direction. Because the Court finds that Monteleone was an employee rather than an independent contractor, Watersport and Harbers may be vicariously liable for his actions. Defendants' Motion is denied.

**IV.    Motion for Summary Judgment Regarding Punitive Damages**

Finally, Defendants move for summary judgment on Plaintiff's request for punitive damages, arguing that their negligence, if any, does not constitute "fraud, oppression, or malice" under Nevada Revised Statutes § 42.005. Because factual questions remain regarding whether Defendants acted with "gross negligence," the Court cannot say as a matter of law that Defendants cannot also be found to have acted with malice. In reality, however, this issue is moot because under the Nevada Code punitive damages may be awarded against individuals who "operate[] a motor vehicle . . . after wilfully consuming alcohol or another substance." Nev. Rev. Stat. § 42.010. The Court therefore finds that a jury may properly award punitive damages in this case.

Defendants also argue that Watersport, as a registered corporation, cannot be liable for punitive damages under Nevada law. In support of this assertion, Defendants cite to § 42.007 of the Nevada Code, which states that

> an employer is not liable for punitive damages for the wrongful act of his employee, unless:

> (a) The employer had advance knowledge that the employee was unfit for the purposes of the employment and employed him with a conscious disregard of the rights or safety of others[.]
>
> If the employer is a corporation, the employer is not liable for exemplary or punitive damages unless the elements of paragraph (a), . . . are met by an officer, director or managing agent of the corporation who was expressly authorized to direct or ratify the employee's conduct on behalf of the corporation.

Despite Defendants' arguments, the Court finds this statute does not preclude recovery of punitive damages. Viewing the evidence in the light most favorable to Charnis, the Court cannot say as a matter of law that Watersport did not have "advance notice" that Monteleone was "unfit for the purposes [his] employment." Although Defendants allege that Monteleone is licenced to operate a motor boat on Lake Mead and that he had passed a required drug screening test, this does not establish as a matter of law that Watersport was not negligent in contracting with Monteleone. Furthermore, as Defendants admit, Clint Harbers, an officer of Watersport, contracted with Monteleone to conduct the wakeboarding excursions. Consequently, a jury could find, as required by the Code, that an officer of Watersport had knowledge of Monteleone's unfitness for employment. Thus, because a reasonable jury could find that Charnis is entitled to punitive damages under the Nevada Code, the Court denies Defendants' Motion for Summary Judgment Regarding Punitive Damages.

/
/
/
/
/
/
/
/
/

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#58) is DENIED.

IT IS ALSO ORDERED that Defendants' Motion for Summary Judgment Regarding Punitive Damages (#57) is DENIED.

IT IS ALSO ORDERED that Defendants' Motion for Summary Judgment Regarding Eric Monteleone (#59) is DENIED.

Dated: May 1, 2009.

_____
**ROGER L. HUNT**
**Chief United States District Judge**